## PAYMENT BY A BUILDING ASSOCIATION TO A WITHDRAWING DEPOSITOR OUT OF ORDER.

[Superior Court of Cincinnati, sitting in General Term.]

ACHILLES H. PUGH v. THE CITY AND SUBURBAN BUILDING ASSOCIATION & LOAN COMPANY.*

Decided, November 14, 1901.

*Building Associations—Satisfying Applications for Withdrawal Out of Order Not Ultra Vires, When—Fraud or Knowledge on Applicant's Part.*

P., a shareholder in the defendant building association, made application for withdrawal, and notwithstanding there were other applications ahead of hers, and that the association was without funds to meet these applications, a warrant was issued for the full amount due her, and a loan was procured from her of a sum equal to the amount of the warrant, the association executing its note for the loan, and cancelling the warrant.

*Held:* That the action of the association in thus satisfying the claim of P. in advance of unsatisfied prior applications for withdrawal, was not *ultra vires* for the reason that it was in violation of a by-law only, and not of the fundamental powers of the association; and that in the absence of proof of knowledge on the part of P., or her agent, that she was being paid out of order, she was not chargeable with constructive knowledge that such was the fact.

JACKSON, J.; RUFUS B. SMITH, J., and SAMUEL W. SMITH, JR., J., concur.

This action was brought by Achilles H. Pugh, plaintiff in error, to recover from the building association, defendant in error, on a promissory note for $6,800, executed June 27, 1898, made payable to the order of Mary Darr Pugh, and now held and owned by said A. H. Pugh as endorsee.

Mary Darr Pugh, the wife, and A. H. Pugh, Jr., Charlotte Pugh, Mary Louise Pugh and Theresa J. Pugh, the children of plaintiff, were shareholders in the building association, the amount of their shares aggregating the sum of $6,800.

*Affirmed by the Supreme Court without report.

On June 22, 1898, said shareholders made application for a total withdrawal from the association, requesting that the withdrawals be paid to Mary Darr Pugh, the wife of plaintiff.

The case was heard below upon an agreed statement of facts, and it appears from said agreed statement of facts that at the time the application for said withdrawal was made there were no funds on hand to pay the amount of said shares and that there were a number of shareholders in said building association who had made applications to withdraw on account of their shares prior to the application of the Pughs.

It further appears from the agreed statement of facts that the plaintiff acted as the agent for his wife and children in making weekly payments to the building association and in effecting the withdrawal; also, that the plaintiff and his wife and children knew at the time their application for withdrawal was made that there were no funds on hand to pay the amount of said withdrawal; but it does not appear that they, or either of them, knew that there were unsatisfied applications for withdrawals on behalf of other shareholders ahead of their application.

When the application for withdrawal herein was made, the building association issued to Mary Darr Pugh a warrant on the treasurer of the company for the payment in full of the amount of said withdrawals. This warrant was transferred by Mrs. Pugh to her husband, and said Pugh thereupon surrendered said warrant to the company and also surrendered the books for the shares of his wife and children, which books were canceled by the company. At the time of the surrender by said Pugh of the warrant in question, the following action was taken by the board of directors of the building association:

"The treasurer was authorized to borrow $6,800 from A. H. Pugh on six months' note at four per cent., with privilege of making payments thereon when convenient."

The minute book of the board of directors of June 22, 1898, shows the following entry:

"Borrowed from Mary D. Pugh, $6,800."

Thereafter, on June 27, 1898, the building association executed to Mary Darr Pugh the note in question for $6,800, which note

was intended to evidence the sum represented by the warrant which was issued to Mrs. Pugh and which sum was borrowed by the building association.

The court below held that the plaintiff was not entitled to maintain an action on said note, and dismissed the petition of plaintiff. The action of the court below in so deciding was predicated upon the view that the action of the building association in issuing the warrant to Mrs. Pugh and in executing and delivering to Mrs. Pugh the note in question, was not in effect a borrowing from Mrs. Pugh of the sum in question, but that it was merely a means of subterfuge resorted to expedite or facilitate the withdrawals of the shares held by the Pughs before their turn had been reached. The court below considered that such payment by the building association to the Pughs was *ultra vires,* and that, being a purely executory *ultra vires* contract, it could not be enforced against the company.

The court below further considered that the wife and children of plaintiff as shareholders in the building association, and the plaintiff himself as their agent, were chargeable with notice of the fact that there were unsatisfied applications for withdrawals ahead of the application for withdrawal on behalf of plaintiff's wife and children.

Revised Statutes of Ohio, Section 3836-3, gives to building associations in this state the right to borrow not exceeding twenty per cent. of the assets, and to issue notes therefor, and it is conceded that the note in question does not violate this provision of the law. We regard the action of the board of directors of the building association in issuing to Mrs. Pugh a warrant on the treasurer for the payment of said withdrawals, and the surrender of said warrant to the company, and the execution and delivery to Mrs. Pugh of the note in question, as tantamount to borrowing in good faith from Mrs. Pugh the amount evidenced by said warrant and the giving of a note in payment of said loan. We think the company had the right to do this although it had not the cash on hand. It is true that the plaintiff and his wife and children must have known and did know that the company did not have the actual cash on hand to meet their application for with-

drawal, but nevertheless we think they had a right to assume from the circumstances of issuing the note that the company *should have had* the cash on hand, and that the method adopted was a legitimate method of effecting a settlement with members who were entitled to withdraw.

It is undoubtedly true that a building association can effect a settlement or compromise with members desiring to withdraw. In *Wamgerien* v. *Aspell,* 47 Ohio St., 250, it was held:

"A building and loan association incorporated under the act of February 21, 1867, has power to compromise with a member, and release him from further obligation to the corporation, whether the indebtedness arose from a loan or on a subscription for stock. And, where the parties to the compromise have acted in good faith, the transaction will not be rescinded because the released member was paid a greater sum of money than he would have received upon a pro rata distribution of the assets of the concern."

This brings us to consider the view entertained by the court below that the action of the board of directors was *ultra vires,* because Article XIV, Section 1, of the constitution of the building association provides as follows:

"A non-borrowing member may withdraw a part or all of the amount due to his credit on his shares. After giving notice in writing to the secretary, he shall be entitled in his turn to receive such sum, less fines and amounts due from him. On the sum so withdrawn he shall receive no dividends."

We can not adopt the view entertained by the court below in this respect, because the payment to the Pughs of the amount of their withdrawals (if the transaction is to be so regarded) must be regarded only as a violation of a by-law or internal rule and regulation of the company, and not as a violation of the powers conferred upon building associations under the laws of Ohio.

Revised Statutes of Ohio, Section 3836-3, permits withdrawals from building associations to be made by shareholders at such times and on such terms as the association may provide. It leaves to the association the fullest discretion in the matter. Therefore the board of directors, at most, violated only a by-law of the com-

pany, and not the fundamental law governing building associations. The directors were empowered and authorized to pay the amount of the withdrawals at the time specified by said Article XIV of the constitution, and we think a member of the association, who made application for withdrawal and who was paid the amount of his withdrawal by the directors, had the right to assume in the absence of direct knowledge to the contrary that the time had arrived when by said article of the constitution the directors would be authorized to make said payment.

In *Railroad Co.* v. *Schuyler,* 34 N. Y., 30, it was held:

"Where the authority of an agent depends upon some fact outside the terms of his power, and which, from its nature, rests particularly within his knowledge, the principal is bound by the representations of the agent, although false, as to the existence of such fact."

This we regard as a sound principle of law, applicable to the facts of this case.

Of course, if Mrs. Pugh or her children, or the plaintiff as their agent, knew that there were unsatisfied applications for withdrawals ahead of theirs, the withdrawal in question under those circumstances would be illegal, and no suit could be maintained on the note in question; but it appears that none of them had actual notice of such fact.

And this brings us to consider whether or not Mrs. Pugh and her children, as shareholders in the company, or Mr. Pugh, as their agent, were chargeable in law with notice of this fact because Mrs. Pugh and her children were shareholders in the building association. The court below assumed that, notwithstanding there was no actual knowledge of this fact, nevertheless plaintiff was chargeable with constructive knowledge. We do not agree with this view of the law.

In *Rudd* v. *Robinson,* 126 N. Y., 113, it was held:

"The mere fact that a person is a director or stockholder of a corporation does not make him chargeable with actual knowledge of its business transactions or entries made in its books.

"The business transactions of a corporation with its members and trustees or directors are on the same footing as those with

strangers, and business entries in its books of account are no more evidence against them than against strangers."

We think, therefore, that the method pursued by the board of directors of the building association in dealing with the Pughs was, in effect, a payment to Mrs. Pugh of the amount of the shares held by her and her children, and a borrowing of the sum by the association, and the execution and delivery of a note for the sum so borrowed; that the action of the board of directors in so doing, although there were unsatisfied applications for withdrawals ahead of the Pughs, was not *ultra vires* in the sense that it violated the fundamental powers of the association, but that it was at most the violation of a by-law of the association, and that neither the withdrawing shareholders nor the plaintiff as their agent having actual notice of such fact were chargeable with constructive notice thereof, but that they were in law justified in assuming that when the board of directors allowed their application for withdrawal that the time had arrived when under the constitution of the building association the directors were authorized so to do.

We think, therefore, plaintiff was entitled to recover on the note in question, and the judgment of the court below must therefore be reversed.

*Cohen & Mack,* for plaintiff in error.

*Benjamin F. Ehrman,* for defendant in error.